■ STEPHANIE MATSUO, Appellant, v YOSHIRO MATSUO, Respondent.—Mahoney, P. J.

Plaintiff commenced this action for divorce in June 1982 and was granted a divorce and an equitable distribution of the marital property by a judgment rendered in March 1985. At the time the action was commenced the parties had been married 18 years and their two children were 18 and 13 years of age. Defendant is a medical doctor who conducts a solo practice through a professional corporation. Plaintiff has a nursing degree but has never worked outside the home except for brief periods in her husband's office. Her time has been devoted primarily to raising the couple's two minor children and to household duties.

The major assets of the marriage were the medical practice and the large marital home in the Village of Cooperstown, Otsego County. Trial Term determined that these assets as well as all the other marital property should be divided by the parties equally. It was ordered that the marital home be sold, proceeds to be divided, and as to other marital property, plaintiff was awarded the household furnishings, an automobile and a distributive share of $106,615. Plaintiff was also awarded custody of the minor child and defendant was ordered to provide support and to pay for the higher education of both the children. Finally, Trial Term determined that plaintiff was capable of becoming self-supporting in the future and, accordingly, ordered that defendant's obligation to provide maintenance would terminate in 1992. This appeal by plaintiff ensued.

Plaintiff contends that Trial Term's instructions for dividing the proceeds from the sale of the marital residence are ambiguous and could lead to results unfair to her. Defendant, on the other hand, contends that the distributive share granted to the wife ($106,615) is the total amount to which plaintiff is entitled and that any proceeds from the sale of the house which go to plaintiff are to be credited against that amount. Both parties misconstrue Trial Term's instruction. Trial Term provided for an equal division of net proceeds after amounts necessary to pay off outstanding mortgages, loans and closing costs. Further, Trial Term provided that payments made by defendant after commencement of this action until July 1, 1985 or the closing date, if earlier, would be credited in

dividing the proceeds. Clearly, Trial Term was not referring to all payments made by defendant during that time, but only those related to the house (i.e., payments on two mortgages, a home improvement loan and a pool loan). The net effect of the credit adjustment is that each party bears half of the costs of the payments made between commencement of the action and July 1, 1985. Since Trial Term ordered the obligations to be divided equally between the parties after July 1985, those payments are excluded from the credit adjustment.

Since Trial Term arrived at the sum of $106,615 following division of the parties' personalty, plaintiff's share of the sale of the marital residence would be in addition to her distributive award. Thus, according to Trial Term's decision, plaintiff is to receive her one-half share of the proceeds of the sale of the marital residence and defendant is to assign his one-half interest to her as partial payment of her $106,615 distributive share. We reject defendant's contention that both halves of the house proceeds were to be credited against plaintiff's distributive share. This would have deprived plaintiff of any income from the sale of the marital residence. Trial Term clearly intended that only defendant's one-half interest, upon assignment to plaintiff, would be credited against her distributive award of $106,615. In our view, Trial Term's decision with respect to the disposition of the marital residence was not ambiguous, nor was it inequitable or improper.

Next, we conclude that Trial Term improperly calculated the value of defendant's medical practice for purposes of equitable distribution. Trial Term measured the value of defendant's medical practice according to the "book value" of the professional corporation. This book value was derived from the corporate balance sheet and reflects only the depreciated value of the tangible assets of the corporation minus the liabilities. As established in *O'Brien v O'Brien* (66 NY2d 576, 585), a professional license acquired during the marriage is marital property. Where the license is marital property, the parties are entitled to equitable portions of it, not a return of funds advanced. Its value is the enhanced earning capacity it affords the holder, despite the difficulties determination of value may present *(supra,* at pp 587-588). Here, although plaintiff submitted expert proof as to the value of defendant's medical practice based on the theory of capitalization of earnings, as opposed to defendant's methodology of book value, no effort was made by Trial Term to analyze the relationship of assets, professional income, liabilities or capital of defendant's medical practice in order to arrive at its value

for equitable distribution purposes. Accordingly, the matter must be remitted for that purpose.

Lastly, several minor mistakes need correction. Plaintiff is correct that defendant was given double deductions for several bank loans. These two loans, a home improvement loan from Wilbur National Bank for $3,697 and a pool loan from Mechanics Bank totaling $12,113, were listed with the obligations to be satisfied from the sale of the marital residence and also on a separate list of liabilities assumed by defendant for which he received credit in computing the nonrealty assets of the parties. These debts should not have been included on both accounts. The matter must be remitted for proper treatment of these debts.

Trial Term erred in settling debts owed to plaintiff's parents. Plaintiff's parents made three loans to the parties. The first loan of $11,203 was disallowed by Trial Term because neither parent could supply documentation to disprove defendant's assertion that it had been paid. We agree. Trial Term allowed the second loan of $23,249 plus interest which had been loaned to the parties to help them purchase their present home. We agree. However, we conclude that Trial Term erred in disallowing the third loan of $6,397 made to the parties when the parents moved from their home into an apartment in the Cooperstown house. Such loan was conceded by defendant's trial testimony and was also reflected in his financial affidavit.

We conclude that Trial Term's disposition of the parties' automobiles was fair.

We also concur with Trial Term's determination that, based on her age, health and nursing degree, and the diminishing demands of the children as they reach adulthood, plaintiff is capable of gaining gainful employment and becoming self-supporting in the future. Plaintiff's proof to the contrary was minimal. Accordingly, we conclude that plaintiff's award of 10 years of maintenance, to terminate in 1992, is adequate maintenance for a period long enough to enable her to become self-supporting.

In its decision, Trial Term denied plaintiff's request for additional counsel fees and for accountant fees. Since plaintiff was previously awarded temporary counsel fees (92 AD2d 710), and since it is possible that plaintiff may receive a larger distributive award by virtue of the greater valuation of defendant's medical practice and by correcting Trial Term's error in giving defendant a double credit for certain loans, we concur with Trial Term's denial of additional fees.

Judgment modified, on the law, without costs, in accordance with the decision herein; matter remitted to Trial Term for further proceedings not inconsistent herewith; and, as so modified, affirmed. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.