◼ JOHN J. CULNAN, Appellant, v VICKI A. CULNAN, Respondent.—Mahoney, P. J. Appeal from a judgment of the Supreme Court (Ford, J.), ordering, *inter alia,* equitable distribution of the parties' marital property, entered December 11, 1987 in Albany County, upon a decision of the court, without a jury.

The parties were married in September 1977 and had a child in June 1979. They separated in August 1982 and this matrimonial action was commenced in July 1984. The parties were granted a divorce and custody of the child was awarded to defendant. Supreme Court equitably distributed marital property by ordering plaintiff to pay defendant $2,000 as a share of cash accumulated during the marriage and $5,000 as a share of plaintiff's retirement plan. Supreme Court also ordered plaintiff to pay defendant $85 per week as maintenance and $80 per week as child support. Finally, plaintiff was ordered to pay $5,196.75 in counsel fees within 30 days. Plaintiff appeals.

Initially, plaintiff challenges the award of $2,000 as a share of cash which was considered to be marital property. While funds in bank accounts held by the parties at the time of the commencement of a matrimonial action may well constitute marital property, property acquired subsequent thereto does not *(see, Lennon v Lennon,* 124 AD2d 788, 790). Here, the uncontradicted evidence indicates that plaintiff had no bank accounts when this action was commenced. Several months

later, he opened an account with his new fiancée with an initial deposit of $50. Within three months plaintiff and his fiancée had deposited about $4,000 in that account, primarily from plaintiff's salary and his fiancée's income tax refunds. No contradictory evidence was offered. Thus, this account clearly was not marital property and was not subject to equitable distribution.

Next, Supreme Court ruled that plaintiff's pension was marital property and ordered him to pay to defendant $5,000 as her share of such pension. "Vested rights in a noncontributory pension plan are marital property to the extent that they were acquired between the date of the marriage and the commencement of a matrimonial action, even though the rights are unmatured at the time the action is begun" *(Majauskas v Majauskas,* 61 NY2d 481, 485-486). This court has also applied the principle in the case of a nonvested pension plan *(Reed v Reed,* 93 AD2d 105, 110-111). Here, the evidence indicates that plaintiff joined the New York State Policemen's and Firemen's Retirement System in October 1977. Thus, the pension was properly determined to be marital property. Plaintiff had only been in the Retirement System for about seven years when this action was commenced. The record does not indicate whether plaintiff's pension rights were vested at that time, nor is there any proof regarding the current worth of the pension. The only proof concerning plaintiff's pension is a letter from the Retirement System stating that he would be eligible to retire in October 2002 and that, assuming his current salary will be his highest and that he completes 25 years of service, he will receive $5,877 per year upon retirement. Defendant offered no proof whatsoever regarding the present or future value of the pension or establishing what amount she was entitled to. Indeed, it does not appear from the record that she sought a distribution of plaintiff's pension rights. In the absence of any proof regarding the value of plaintiff's pension, Supreme Court's decision to value defendant's share at $5,000 was mere speculation. Defendant had the burden of establishing the value of the pension interest she is seeking by actual evidence or some other evidence establishing the value of the pension *(see, Del Gado v Del Gado,* 129 AD2d 426, 428). Since she failed to do so, Supreme Court was not required to speculate as to the value.

Next, plaintiff contends that the awards of $85 per week maintenance and $80 per week child support are excessive. We disagree. There was significant evidence in the record dealing with the relative financial situations of the parties

and the amounts ordered by Supreme Court for maintenance and child support are fully justified by such evidence. However, we disagree with Supreme Court's decision to award indefinite maintenance.

Implicit in the scheme of the Equitable Distribution Law is the view that: "upon dissolution of the marriage there should be a winding up of the parties' economic affairs and a severance of their economic ties by an equitable distribution of the marital assets. Thus, the concept of alimony, which often served as a means of lifetime support and dependence for one spouse upon the other long after the marriage was over, was replaced with the concept of maintenance which seeks to allow 'the recipient spouse an opportunity to achieve [economic] independence' " *(O'Brien v O'Brien,* 66 NY2d 576, 585, quoting Assembly mem, 1980 NY Legis Ann, at 130). Thus, even where the circumstances of a case warrant an award of maintenance, an important consideration is the duration of such award. The time period is that necessary to give a spouse a reasonable amount of time to become self-supporting *(see, Matsuo v Matsuo,* 124 AD2d 864, 866; *Stevens v Stevens,* 107 AD2d 987, 989; 3 Foster, Freed and Brandes, Law and the Family § 19:1, at 723 [2d ed]). Indefinite maintenance has been upheld where a marriage was of long duration and a spouse was older and unlikely to have an opportunity to obtain the education or experience necessary to become self-supporting in the reasonably foreseeable future *(see, Murphy v Murphy,* 110 AD2d 688). However, it has been limited where the recipient spouse is relatively young and healthy and able to enter the work force *(see, Gundlah v Gundlah,* 116 AD2d 1026, *lv denied* 68 NY2d 603; *Hillmann v Hillmann,* 109 AD2d 777, 778). Here, defendant is almost 29 years old and has a high school education. She has some work experience. The parties' child is now nine years old. Based on these facts, continuing maintenance for 10 years from the date of entry of the order to be entered hereon should be sufficient to enable defendant to become self-supporting.

Plaintiff also alleges as error Supreme Court's decision to make the child support and maintenance awards retroactive to the date of commencement of the action. Statute provides that child support and maintenance awards are effective "as of the date of the application therefor" (Domestic Relations Law § 236 [B] [6] [a]; [7] [a]). The service of a summons and complaint, or even a summons alone, wherein a request for maintenance or child support is contained, has been held to constitute an application for such *(see, Petrie v Petrie,* 124

AD2d 449, 451, *appeal dismissed* 69 NY2d 1038; *Evangelista v Evangelista,* 111 AD2d 904; *Harness v Harness,* 99 AD2d 658). Further, if such relief is not sought in the pleadings, an application for child support or maintenance pendente lite will be considered an application for such *(see, Khalily v Khalily,* 99 AD2d 482). Where a spouse does not seek maintenance or child support in the summons and complaint but later seeks such as relief pendente lite, it is improper to award relief retroactive to the commencement of the action *(Lobotsky v Lobotsky,* 122 AD2d 253, 255; *Rodgers v Rodgers,* 98 AD2d 386, 390, n 1, *appeal dismissed* 62 NY2d 646).

Here, defendant did not seek child support or maintenance in her answer, nor did she make any application for such relief pendente lite. However, she had obtained an order from Family Court prior to the commencement of this action which required plaintiff to pay $40 per week child support. While this fact cannot justify making the increased child support award retroactive to a point prior to the time this action was commenced *(see, Cappiello v Cappiello,* 66 NY2d 107, 109), it does support Supreme Court's decision to make the child support award retroactive to the date of the commencement of the action, with credit for the child support payments made after the date of the commencement of this action. On the other hand, defendant never sought any form of maintenance until her attorney filed a trial memorandum on April 1, 1985. Thus, the maintenance award should be made retroactive to that date.

Finally, the direction to pay a spouse's counsel fees is within the trial court's power (Domestic Relations Law § 237 [a]). Assessment of the parties' financial capacity to pay counsel fees is within the trial court's discretion *(Walsh v Walsh,* 92 AD2d 345, 347). Here, an assessment of the relative financial positions of the parties convinces us that Supreme Court properly ordered plaintiff to pay $5,196.75 in counsel fees and disbursements. However, we disagree with Supreme Court's directive that counsel fees be paid by plaintiff within 30 days, and direct that such sum be paid within six months after service of a copy of the order to be entered upon this decision with notice of entry.

Judgment modified, on the law and the facts, without costs, by (1) reversing so much thereof as awarded $2,000 to defendant as a share of marital property, (2) reversing so much thereof as awarded defendant $5,000 as a share of plaintiff's pension rights, (3) modifying the award of maintenance to provide that it is retroactive to April 1, 1985 and shall

continue for not more than 10 years from the date of this court's decision and (4) modifying the directive that plaintiff pay counsel fees to provide that the counsel fees be paid within six months after service of a copy of the order to be entered upon this court's decision with notice of entry; matter remitted to the Supreme Court for the calculation of arrearages and the provision for payment of such; and, as so modified, affirmed. Mahoney, P. J., Kane, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.